**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CHRISTINE MAINELLA and VINCENT**
**MAINELLA,**

                              **Plaintiffs,**

            **v.**                                              **1:15-CV-1082**
                                                                **(FJS/DJS)**

**THE GOLUB CORPORATION doing business**
**as Price Chopper,**

                              **Defendant.**
_____

**APPEARANCES**                          **OF COUNSEL**

**OFFICE OF THOMAS M. GAMBINO**          **THOMAS M. GAMBINO, ESQ.**
**& ASSOCIATES, P.C.**
222 Church Street
Poughkeepsie, New York 12601
Attorneys for Plaintiffs

**JACKON LEWIS P.C.**                    **JOSEPH J. LYNETT, ESQ.**
44 South Broadway, 14th Floor            **KRISTI RICH WINTERS, ESQ.**
White Plains, New York 10601

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

        Plaintiffs commenced this action on September 3, 2015, against Defendant Golub

Corporation ("Defendant Price Chopper").  _See_ Dkt. No. 1 ("Complaint").  Plaintiff Christine

Mainella ("Plaintiff Christine M."), a former pharmacist for Defendant Price Chopper, filed suit

against Defendant Price Chopper following her termination in January 2013, alleging the following

causes of action: (1)(a) disability discrimination and (b) retaliation in violation of the Americans

with Disabilities Act of 1990 ("ADA"); (2)(a) discrimination and (b) retaliation in violation of the

New York State Executive Law, commonly known as the New York State Human Rights Law

("NYSHRL"); and (3) age discrimination in employment in violation of the Age Discrimination in

Employment Act ("ADEA").  *See* Complaint at ¶ 1.

Furthermore, Plaintiff Vincent Mainella ("Plaintiff Vincent M.") alleges that Defendant

Price Chopper terminated him as Vice President of Pharmacy, Health and Wellness in April 2013

and that this termination constituted a retaliatory discharge in violation of the ADA and the

NYSHRL, as well as age discrimination in violation of the ADEA.  *See* Complaint at ¶¶ 1, 41;

Plaintiffs' Statement of Facts at ¶¶ 31, 36 (citations omitted).

Pending before the Court are Defendant's motion for summary judgment with regard to all

of Plaintiffs' claims, *see* Dkt. No. 41, and Plaintiffs' motion for summary judgment limited to issues

of liability, *see* Dkt. No. 42, pursuant to Rule 56 of the Federal Rules of Civil Procedure.


## II. BACKGROUND

In 2001 Defendant Price Chopper hired Plaintiff Christine M., a New York State-licensed

pharmacist, who at the time was 45 years old, to work at its pharmacies.  *See* Dkt. No. 41-4

("Defendant's Statement of Facts") at ¶ 2 (citations omitted); Dkt. No. 42-2 ("Plaintiffs' Statement

of Facts") at ¶ 3 (citations omitted).  After working as a Pharmacy Trainer, Plaintiff was promoted

to Pharmacy Manager in 2010, when she was 54 years of age.  *See* Defendant's Statement of Facts

at  ¶ 4 (citation omitted).  In 2006, Plaintiff Christine M. contracted an autoimmune disease called

immune thrombocytopenic purpura ("ITP").[1]  *See* Defendant's Statement of Facts at ¶ 5 (citation

---

[1] Plaintiff Christine M. claims that she contracted ITP as a result of a flu shot she
received after Defendant Price Chopper encouraged its pharmacists to get vaccinated.  *See* Dkt.

(continued...)

omitted); Plaintiffs' Statement of Facts at ¶ 6 (citations omitted); Dkt. No. 41-1, Exhibit "B" at 44.[2]

_____

[1](...continued)
No. 41-1 Exhibit "B" at 43-44.  However, she acknowledges that Defendant Price Chopper did not require its pharmacists to receive the flu vaccination and that she did not receive the vaccination as part of her official duties as a pharmacist.  *See id.*

[2] Dkt. No. 41-1 is comprised of the following documents: (1) Affirmation of Joseph J. Lynett, pages 1-4; (2) Certificate of Service, page 5; (3) Exhibit "A" - relevant pages from the transcript of Blaine Bringhurst's September 22, 2016 Deposition, pages 6-21; (4) Exhibit "B" - relevant pages from the transcript of Plaintiff Christine Mainella's August 11, 2016 Deposition, pages 22-99; (5) Exhibit "C" - relevant pages from the transcript of Plaintiff Vincent Mainella's August 12, 2016 Deposition, pages 100-141; (6) Exhibit "D" - relevant pages from the Transcript of Kathy Bryant's September 22, 2016 Deposition, pages 142-172; (7) Exhibit "E" - copy of the November 11, 2011 email, introduced and authenticated at Plaintiff Christine Mainella's Deposition as Exhibit 2, pages 173-174; (8) Exhibit "F" - copy of the job descriptions, introduced and authenticated at Plaintiff Christine Mainella's deposition as Exhibit 3, pages 175-185; (9) Exhibit "G" - copy of the September 19, 2012 email, introduced and authenticated at Plaintiff Christine Mainella's deposition as Exhibit 4, pages 186-187; (10) Exhibit "H" - copy of the August 1, 2012 request, introduced and authenticated at Plaintiff Christine Mainella's deposition as Exhibit 7, pages 188-192; (11) Exhibit "I" - copy of the May 2014 form, introduced and authenticated at Plaintiff Christine Mainella's deposition as Exhibit 6, pages 193-195; (12) Exhibit "J" - relevant pages from the transcript of Margaret Davenport's September 23, 2016 Deposition, pages 196-205; (13) Exhibit "K" - copy of the September 24, 2012 letter, introduced and authenticated at Plaintiff Christine Mainella's deposition as Exhibit 8, pages 206-207; (14) Exhibit "L" - copy of the FMLA certification, introduced and authenticated at Plaintiff Christine Mainella's deposition as Exhibit 9, pages 208-211; (15) Exhibit "M" - copy of the October 1, 2012 letter, introduced and authenticated at Plaintiff Christine Mainella's deposition as Exhibit 10, pages 212-214; (16) Exhibit "N" - copy of the October 26, 2012 letter, introduced and authenticated at Plaintiff Christine Mainella's deposition as Exhibit 11, pages 215-216; (17) Exhibit "O" - copy of the November 20, 2012 decision, introduced and authenticated at Plaintiff Christine Mainella's deposition as Exhibit 13, pages 217-229; (18) Exhibit "P" - copy of the January 9, 2013 letter, introduced and authenticated at Plaintiff Christine Mainella's deposition as Exhibit 14, pages 230-238; (20) Exhibit "Q" - copy of the charts at GOLUB2247 and GOLUB562, introduced and authenticated at Kathy Bryant's deposition as Exhibit 2, pages 239-241; (21) Exhibit "R" - copy of the job description, introduced and authenticated at Plaintiff Vincent Mainella's deposition as Exhibit 15, pages 242-245; (22) Exhibit "S" - copy of the Company Handbook, introduced and authenticated at Plaintiff Vincent Mainella's deposition as Exhibit 8, pages 246-249; (23) Exhibit "T" - copy of the reduction in force process notes at GOLUB2324 introduced and authenticated at Margaret Davenport's deposition as Exhibit 29, pages 250-251; (24) Exhibit "U" - copy of the chart at GOLUB2325, introduced and authenticated at Margaret Davenport's deposition as Exhibit 29, pages 252-253; (25) Exhibit "V"

(continued...)

When Plaintiff Christine M. began employment with Defendant Price Chopper in 2001,

Defendant Price Chopper did not provide immunization services to customers.  *See* Plaintiffs'

Statement of Facts at ¶ 4 (citations omitted).  Consequently, Plaintiff Christine M. did not have to

administer immunizations as part of her job.  However, after New York State implemented

regulations that permitted pharmacists to provide immunizations to the public, Defendant Price

Chopper decided to implement a pilot program under which its pharmacists could administer

immunizations on a voluntary basis.  *See* Defendant's Statement of Facts at ¶¶ 12-14 (citations

omitted); Plaintiffs' Statement of Fact at ¶ 5 (citations omitted).  In 2011, after the program proved

successful, Defendant Price Chopper decided to make immunization certification a mandatory job

requirement for all its pharmacists.  *See* Defendant's Statement of Facts at ¶¶ 15-16 (citations

omitted); Plaintiffs' Statement of Facts at ¶ 5 (citations omitted).  Thus, Defendant Price Chopper

required that pharmacists whom it employed at the time, including Plaintiff Christine M.,

successfully complete an immunization certification program by the following year, *i.e.,* August

2012, as a condition of their continued employment with Defendant Price Chopper.  *See*

Defendant's Statement of Facts at ¶¶ 18-19 (citations omitted); Plaintiffs' Statement of Facts at ¶ 5

(citations omitted).

As a result of her ITP, Plaintiff Christine M. has a "compromised immune system"; and, if

---

[2](...continued)
- copy of Plaintiff Christine Mainella's EEOC Charge, introduced and authenticated at her
deposition as Exhibit 15, pages 254-256; and (26) Exhibit "W" - copy of transcript of the oral
argument in *Stevens v. Rite Aid*, No. 6:13-CV-783, 2015 U.S. Dist. LEXIS 127312 (N.D.N.Y.),
Docket No. 63 (December 24, 2014), pages 257-291.

For ease of reference, the Court will refer to these documents by the Exhibit letter and the
page numbers that the Court's electronic filing system ("CM/ECF") generated, *e.g.*, Dkt. No. 41-
1 Exhibit "A" at 7.

she "has to be treated for a needle stick, the drugs used as part of that treatment . . . could cause her platelet levels to reach a critical level that [could] cause her death."  *See* Plaintiffs' Statement of Facts at ¶ 11 (citations omitted).  Plaintiff Christine M. notified Defendant Price Chopper of her condition and that she suffered "extreme anxiety" at "[t]he thought of having to immunize anyone [and] thereby potentially exposing [individuals] to the same exposure to an auto immune disease" that she had allegedly suffered due to a flu shot.[3]  *See* Plaintiffs' Statement of Facts at ¶ 12 (citations omitted).  Therefore, Plaintiff Christine M. advised Defendant Price Chopper that she could not perform immunizations as Defendant Price Chopper's policy required; and she requested a "reasonable accommodation," *i.e.*, that Defendant Price Chopper not require her to immunize customers as part of her job.  *See* Plaintiffs' Statement of Facts at ¶¶ 7-8, 16 (citations omitted); Defendant's Statement of Facts at ¶¶ 32-34 (citations omitted).  Defendant Price Chopper's ADA Committee denied Plaintiff Christine M.'s requests for an accommodation that would exempt her from having to administer immunizations.  *See* Defendant's Statement of Facts at ¶¶ 38, 47 (citations omitted).  However, Defendant Price Chopper did approve Plaintiff Christine M.'s request for leave under the Family and Medical Leave Act ("FMLA") due to her "anxiety."  *See id.* at ¶¶ 43-44 (citations omitted).

Following her two-month leave period under the FMLA, Plaintiff Christine M. returned to work.  *See* Defendant's Statement of Facts at ¶¶ 55-57 (citations omitted).  Defendant Price Chopper scheduled a meeting with her to discuss her request for an accommodation.  *See id.* at ¶ 56 (citation

---

[3] Plaintiff Christine M. is otherwise physically capable of administering vaccines.  *See* Defendant's Statement of Facts at ¶ 34.  In fact, Plaintiff Christine M. received her immunization certification in compliance with Defendant Price Chopper's immunization certification requirement for all of its then-employed and future pharmacists.  *See id.* at ¶ 31 (citation omitted).

omitted); Plaintiffs' Statement of Facts at ¶ 25 (citations omitted).  Thus, in January 2013, Plaintiff

Christine M. and Defendant Price Chopper formally met to discuss possible accommodations, and

Plaintiff Christine M. further reiterated her desire to be exempt from administering vaccines.  *See*

Defendant's Statement of Facts at ¶ 57 (citations omitted).  Defendant Price Chopper refused

Plaintiff Christine M.'s suggested accommodation and proposed she work as a Pharmacy

Technician.  *See* Dkt. No. 42-3 ("Christine M. Aff.") at ¶ 19; Defendant's Statement of Facts at ¶ 60

(citations omitted); Plaintiffs' Statement of Facts at ¶ 19 (citations omitted).  Plaintiff Christine M.

declined the reassignment.  *See* Defendant's Statement of Facts at ¶ 61 (citations omitted).

Thereafter, Defendant Price Chopper terminated Plaintiff Christine M.'s employment effective

January 11, 2013, at which time she was 56 years old.  *See* Defendant's Statement of Facts at ¶ 62

(citations omitted); Plaintiffs' Statement of Facts at ¶¶ 29-30 (citations omitted).

Plaintiff Vincent M. was Vice President of Pharmacy, Health and Wellness for Defendant

Price Chopper during all times relevant to this action.  *See* Plaintiffs' Statement of Facts at ¶¶ 31, 38

(citations omitted); Defendant's Statement of Facts at ¶ 69 (citation omitted).  In April 2013,

Defendant Price Chopper terminated Plaintiff Vincent M.'s employment.  *See* Defendant's

Statement of Facts at ¶ 95; Plaintiffs' Statement of Facts at ¶ 36 (citations omitted).

Following their terminations, Plaintiffs filed claims against Defendant Price Chopper with

the United States Equal Employment Opportunity Commission ("EEOC").  *See* Plaintiffs' Statement

of Facts at ¶ 52 (citation omitted); Dkt. No. 45-2 ("Defendant's Responsive Statement of Facts") at

¶ 52.  The EEOC issued "right to sue" letters to both Plaintiffs on June 10, 2015.  *See* Plaintiffs'

Statement of Facts at ¶ 55 (citations omitted); Defendant's Responsive Statement of Facts at ¶ 55

(citations omitted); Dkt. No. 1-1 ("EEOC Right to Sue Letter - Christine Mainella"); Dkt. No. 1-2

("EEOC Right to Sue Letter - Vincent Mainella").  Plaintiffs commenced this action on September

3, 2015.  *See, generally,* Complaint.


### III. DISCUSSION

**A.    Standard of review**

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he court shall grant summary

judgment if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears

the burden of demonstrating "that no genuine issue of material fact exists."  *Eastman Mach. Co.,*

*Inc. v. United States*, 841 F.2d 469, 473 (2d Cir. 1988) (citing *Adickes v. S.H. Kress & Co.*, 398

U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970)).  To withstand such a motion, the

non-moving party "'must set forth specific facts showing that there is a genuine issue for trial.'"

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation and footnote omitted).

"The fact that both sides move for summary judgment does not guarantee that there is no

material issue of fact to be tried."  *Eastman Mach.*, 841 F.2d at 473 (citation omitted).  "Rather, the

court must evaluate each party's motion on its own merits, taking care in each instance to draw all

reasonable inferences against the party whose motion is under consideration."  *Schwabenbauer v.*

*Bd. of Educ. of City Sch. Dist. of City of Olean*, 667 F.2d 305, 314 (2d Cir. 1981).  Additionally,

> [a]lthough courts should be cautious about granting summary
> judgment in cases where motive, intent or state of mind are at issue, a
> common component of discrimination actions, . . . "the salutary
> purposes of summary judgment -- avoiding protracted, expensive and
> harassing trials -- apply no less to discrimination cases than to other
> areas of litigation. . . ."

*Bain v. Wal-Mart Stores, Inc.*, 585 F. Supp. 2d 449, 451-52 (W.D.N.Y. 2008) (internal citations and

quotation omitted).

**B.     Plaintiff Christine M's discrimination claims under the ADA and the NYSHRL**

Courts analyze discrimination claims under the ADA and the NYSHRL according to the "burden-shifting framework" that the Supreme Court established for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Greenberg v. N.Y. City Transit Auth.*, 336 F. Supp. 2d 225, 234 (E.D.N.Y. 2004) (citation omitted); *Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 117 n.1 (2d Cir. 2004) (stating that "New York State disability claims are governed by the same legal standards as federal ADA claims" (citation omitted)).  First, "[a] plaintiff must establish a prima facie case" of discrimination.  *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 169 (2d Cir. 2006).

> To make out a *prima facie* case under the ADA, a plaintiff must establish that: "(1) h[er] employer is subject to the ADA; (2) [s]he was disabled within the meaning of the ADA; (3) [s]he was otherwise qualified to perform the essential functions of h[er] job, with or without reasonable accommodation; and (4) [s]he suffered adverse employment action because of h[er] disability."

*Giordano v. City of N.Y.*, 274 F.3d 740, 747 (2d Cir. 2001) (quoting *Heyman v. Queens Vill. Comm. for Mental Health*, 198 F.3d 68, 72 (2d Cir. 1999) (citing *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869-70 (2d Cir. 1998))).

Plaintiff Christine M. indisputably satisfied the first element of her *prima facie* case. Defendant Price Chopper is an "employer" because it is "engaged in an industry affecting commerce" and employs "15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year[.]"  42 U.S.C. 12111(5)(A).  However, the Court concludes that Plaintiff Christine M. "was [not] otherwise qualified to perform the essential functions of h[er] job, with or without reasonable accommodation" and, therefore, fails to satisfy the

-8-

third element of her *prima facie* case.[4]

### 1. Essential functions of Plaintiff Christine M.'s job as a Price Chopper pharmacist

In determining whether a particular job function is essential, courts consider the following factors: "'the employer's judgment, written job descriptions, the amount of time spent on the job performing the function, . . ., the work experience of past employees in the position, and the work experience of current employees in similar positions.'" *Stevens v. Rite Aid Corp.*, 851 F.3d 224, 229 (2d Cir. 2017) (quoting *McMillan v. City of New York*, 711 F.3d 120, 126 (2d Cir. 2013) (citing *Stone v. City of Mount Vernon*, 118 F.3d 92, 97 (2d Cir. 1997))) (other citation omitted).  In addition, "[c]ourts 'must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position,' *Shannon v. New York City Transit Authority*, 332 F.3d 95, 100 (2d Cir. 2003) (citation and internal quotation marks omitted), but 'no one listed factor will be dispositive.'  *Stone*, 118 F.3d at 97."  *Stevens*, 851 F.3d at 229.  Finally, "[c]ourts must conduct 'a fact-specific inquiry into both the employer's description of a job and how the job is actually performed in practice.'"  *Id.* (quoting *McMillan*, 711 F.3d at 126).

In this case, the evidence, which the Court is required to view in the light most favorable to Plaintiff Christine M., compels a finding that immunization injections were an essential job requirement for Defendant Price Chopper's pharmacists at the time of Plaintiff Christine M.'s

---

[4] Since the Court finds that Plaintiff Christine M. cannot satisfy the third element of her *prima facie* case and that, as a result, her disability/failure to accommodate claims under the ADA and the NYSHRL fail, the Court does not need to address the second and fourth elements of her *prima facie* case.

termination.  Defendant Price Chopper made the business decision to require all its pharmacists to become immunization-certified.  As part of its implementation of this business decision, Defendant Price Chopper instituted a pilot program in which some of its pharmacists voluntarily administered immunizations following New York State's implementation of regulations that permitted pharmacists to provide immunizations.  *See* Defendant's Statement of Facts at ¶¶ 12-14; Dkt. No. 41-3 ("Defendant's Memorandum") at 14.[5]  Following the success of its pilot program, Defendant Price Chopper decided "to make providing immunizations a mandatory job requirement for all of its Pharmacists."  *See* Defendant's Statement of Facts at ¶¶ 15-16 (citations omitted).  Therefore, in November 2011, Defendant Price Chopper, in an email entitled "Immunization Certification Requirement," notified all of its pharmacists that "Immunization Certification [would be] a mandatory requirement for employment as a Pharmacist at Price Chopper."  *See* Dkt. No. 41-1 Exhibit "E" at 174; Defendant's Statement of Facts at ¶ 18 (citations omitted).  In that same email, Defendant Price Chopper also informed its current pharmacists that they would need to complete the certification program by the following year.  *See* Dkt. No. 41-1 Exhibit "E" at 174; Defendant's Statement of Facts at ¶ 19 (citation omitted).  In addition, Defendant Price Chopper revised its job descriptions for "Pharmacy Managers" and "Staff Pharmacists" (collectively "pharmacists") to include providing immunizations.  *See* Defendant's Statement of Facts at ¶¶ 20-23 (citations omitted); Dkt. No. 41-1 Exhibit "E" at 176-185.  Specifically, Defendant Price Chopper revised its list of "Essential Duties and Requirements" for pharmacists to include "[p]articipat[ion] in patient centered services including immunization[.]"  *See* Dkt. No. 41-1 Exhibit "E" at 182, 184.

---

[5] According to Plaintiff Vincent M., Defendant Price Chopper was the "first chain in the State of New York to give immunizations[.]"  *See* Dkt. No. 41-1 Exhibit "C" at 102.

Defendant Price Chopper also included "Immunization Certification" under "Minimum Requirements" for pharmacists.  *See* Dkt. No. 41-1 Exhibit "E" at 183, 185.

Furthermore, on September 19, 2012, Kathy Bryant, Defendant Price Chopper's Director of Pharmacy, sent an email, in which she stressed the importance of obtaining and maintaining an up-to-date immunization certification.  *See* Dkt. No. 41-1 Exhibit "G" at 187.  For example, she stated that "[Defendant Price Chopper was] likening [the immunization] certification to [a] Pharmacy licensure" and that pharmacists would "need to remain current on both to practice Pharmacy at Price Chopper."  *See* Defendant's Statement of Facts at ¶¶ 24-25 (citations omitted); Dkt. No. 41-1 Exhibit "G" at 187.  Ms. Bryant also reiterated to pharmacists that the "Immunization Certification [had] become a mandatory requirement of employment as a pharmacist at Price Chopper," and pharmacists without the certification would no longer "be permitted to work in a Price Chopper Pharmacy[.]"  *See* Defendant's Statement of Facts at ¶¶ 25-27; Dkt. No. 41-1 Exhibit "G" at 187.[6]

In addition, although administering immunizations comprises only a very small portion of pharmacists' duties at Defendant Price Chopper, the overall number of immunizations has grown substantially each year since Defendant Price Chopper implemented the program.  For example, the number of immunizations nearly doubled from 16,562 to 32,468 between 2012 and 2014.  *See* Dkt. No. 42-7 at 5.

The work experience of current employees also indicates that Defendant Price Chopper considered providing immunizations to be an essential function of its pharmacists' job.  For

---

[6] Ms. Bryant also testified at her deposition that Defendant Price Chopper's policy for both "an employee [of] 10 years or 20 years" was "either you get . . . immunization certification and actually give [immunizations]," or "you're fired."  *See* Dkt. No. 41-1 Exhibit "D" at 163.

example, in addition to rejecting Plaintiff Christine M.'s exemption request, Defendant Price Chopper rejected the requests of three other pharmacists who also wished to be exempt from administering immunizations for medical reasons.  *See* Defendant's Statement of Facts at ¶¶ 39-40 (citations omitted); Dkt. No. 41-1 Exhibit "D" at 158-161.  The only "exemptions" that Defendant Price Chopper granted were temporary exemptions to two pregnant employees who did not wish to administer "live" vaccines during the duration of their pregnancies.  *See* Defendant's Statement of Facts at ¶ 41 (citation omitted); Dkt. No. 41-1 Exhibit "D" at 161-162.[7]

Finally, Defendant Price Chopper has noted several consequences that could occur if it did not require its pharmacists to provide immunizations.  First, Defendant Price Chopper states that it "would have to discontinue immunization business in New York State since only [its] Pharmacists, among all of its employees, can lawfully immunize customers."  *See* Defendant's Memorandum at 15 (citation omitted).  According to Defendant Price Chopper, such a move would result in the loss of its competitive edge in the marketplace because providing immunizations in retail pharmacies

---

[7] Although Plaintiff Christine M. argues that the Court should "afford certain considerations [to pharmacists who were employees of Defendant Price Chopper when it changed its job requirements for pharmacists] as opposed to new hires" when assessing whether immunization administration is an essential function of a pharmacist's job, *see* Dkt. No. 46 ("Plaintiffs' Opposition Memorandum") at 25, she has cited no case law to support this proposition.  Moreover, as Defendant Price Chopper correctly points out, the proper inquiry is what the employer regards as an essential function for a particular position.  *See, e.g., Hunt-Watts v. Nassau Health Care Corp.*, 43 F. Supp. 3d 119, 129-30 (E.D.N.Y. 2014) (noting that, "[i]n evaluating the evidence of what constitutes an essential function, the Court must grant deference to what the employer defines as an essential function, not solely what the plaintiff did previously" (citing *Shannon*, 332 F.3d at 100 ("In approaching [the essential function inquiry], a court must give considerable deference to an employer's judgment regarding what functions are essential for service in a particular position.") (alterations omitted) (citing *D'Amico*, 132 F.3d at 151 (itself citing *Doe v. New York Univ.*, 666 F.2d 761, 776 (2d Cir. 1981))).

"has become a 'standard of practice.'"  *See id.*[8]

For all the above-stated reasons, the Court concludes that providing immunizations was an essential function of the job of Defendant Price Chopper's pharmacists at the time that Defendant Price Chopper terminated Plaintiff Christine M.'s employment.

### 2. *"Reasonable accommodation"*

"In discrimination claims based both on adverse employment actions and on failures to accommodate, the plaintiff 'bears the burdens of both production and persuasion as to the existence of some accommodation that would allow [her] to perform the essential functions of [her] employment.'"  *McMillan v. City of N.Y.*, 711 F.3d 120, 126 (2d Cir. 2013) (quoting [*McBride*, 585 F.3d] at 97); (citing *Borkowski v. Valley Cent. Sch. Dist.*, 63 F.3d 131, 137-38 (2d Cir. 1995)). Furthermore, "[a]fter the essential functions of the position are determined, the plaintiff must demonstrate that . . . she could have performed these functions, with or without reasonable accommodation, at the time of the termination . . ."  *Id.* at 127.  This burden is not a heavy one; "'[i]t is enough for the plaintiff to suggest the existence of a plausible accommodation, the costs of which, facially, do not clearly exceed its benefits.'"  *Id.* (quoting [*Borkowski*, 63 F.3d] at 138). However, it is important to remember "that the issue is whether a reasonable accommodation would have enabled [the plaintiff] to perform that essential function, not whether . . . [the plaintiff] could perform [her] other duties as a pharmacist."  *Stevens*, 851 F.3d at 230.

---

[8] Plaintiff Christine M. appears to concede this point by stating that "retail pharmacy now requires, pretty much across the nation, that [pharmacists] immunize" and that "find[ing] a place that doesn't require it, is pretty much non-existent[.]"  *See* Dkt. No. 41-1 Exhibit "B" at 25-26.

"A reasonable accommodation may include 'job restructuring, part-time or modified work schedules, reassignment to a vacant position, . . . and other similar accommodations for individuals with disabilities.'" *Stevens*, 851 F.3d at 230 (quoting 42 U.S.C. § 12111(9)).  However, "[a] reasonable accommodation can never involve the elimination of an essential function of a job," *Stevens*, 851 F.3d at 230 (quoting *Shannon*, 332 F.3d at 100);  nor is it a reasonable accommodation for a disabled employee to shift an essential job function onto others, *see Atencio v. U.S. Postal Serv.*, 198 F. Supp. 3d 340, 358 (S.D.N.Y. 2016) (stating that "an employer 'is not required to reallocate essential functions'" (quotation omitted)); *Wardia v. Justice & Pub. Safety Cabinet Dep't of Juvenile Justice*, 509 F. App'x 527, 531 (6th Cir. 2013) (noting that reallocation of an essential function to another employee would "render the essential-function step of an ADA analysis meaningless").

In this case, Plaintiff Christine M. has failed to suggest a reasonable accommodation that would not require elimination of an essential function of her job, *i.e.*, immunizing customers.  She suggests that Defendant Price Chopper could reassign her to its Central Fill Pharmacy, where, she claims, the pharmacists are not required to administer immunizations because that Pharmacy is not open to the public.  To the contrary, Defendant Price Chopper asserts that providing immunizations is a mandatory job requirement for all pharmacists regardless of the location at which they work, even those pharmacists who work at the Central Fill Pharmacy, who, admittedly, have limited contact with the general public.  Moreover, as Defendant Price Chopper points out, the only evidence that Plaintiff Christine M. cites to support her assertion that pharmacists who work at the Central Fill Pharmacy do not have to provide immunizations is her own affidavit.  *See*, *e.g.*, Plaintiffs' Statement of Facts at ¶ 27.  Furthermore, this suggested "accommodation" would amount

-14-

to the elimination of an essential job function and, thus, is not a "reasonable" accommodation. *See Stevens*, 851 F.3d at 230 (stating that "[a] reasonable accommodation can never involve the elimination of an essential function of a job" (quoting *Shannon*, 332 F.3d at 100)); *Atencio*, 198 F. Supp. 3d at 358.

Finally, although Defendant Price Chopper offered to reassign Plaintiff Christine M. to a pharmacy technician position, the next highest vacant position for which she was qualified and which did not require immunizing customers, she rejected this offer of a reasonable accommodation.[9] *See* Defendant's Statement of Facts at ¶ 60.

Accordingly, because Plaintiff Christine M. has failed to produce any evidence of a reasonable accommodation that would have allowed her to perform immunizations at the time of her dismissal, other than Defendant Price Chopper's offer to reassign her to a pharmacy technician position, which she refused, the Court concludes that Plaintiff Christine M. has failed to demonstrate that she is qualified to perform the essential functions of her job as a pharmacist with or without reasonable accommodation.

Therefore, the Court grants Defendant's motion for summary judgment with regard to her discrimination/failure to accommodate claims under the ADA and the NYSHRL. *See Shepheard v. N.Y. City Corr. Dep't*, 360 F. App'x 249, 250 (2d Cir. 2010) (summary order) (finding that the district court properly granted summary judgment "because [the plaintiff] failed to demonstrate that she was qualified to perform the essential functions of her position with or without a reasonable

---

[9] Although Plaintiff Christine M. asserts that pharmacy technicians are "part of the immunization process" and "have sustained accidental needle sticks in the process," she admits that pharmacy technicians "do not do the physical immunizations." *See* Dkt. No. 41-1 Exhibit "B" at 88-89; Plaintiffs' Statement of Facts at ¶ 21 (citations omitted).

accommodation" (citing *McBride*, 583 F.3d at 97)).

### C.    Plaintiff Christine M.'s retaliation claims under the ADA and the NYSHRL

Defendant Price Chopper asserts that the Court should dismiss Plaintiff Christine M.'s retaliation claims under the ADA and the NYSHRL because she did not exhaust her administrative remedies with regard to these claims. *See* Defendant's Memorandum at 19; Defendant's Opposition Memorandum at 14. Specifically, Defendant Price Chopper argues that, because Plaintiff Christine M. did not assert a retaliation claim before the EEOC, she is precluded from doing so now. *See* Defendant's Memorandum at 21; Dkt. No. 45 ("Defendant's Opposition Memorandum") at 14 n.5 (citation omitted). Alternatively, Defendant Price Chopper argues that Plaintiff Christine M. has failed to present any evidence that its reasons for terminating her were a pretext for retaliation. *See* Defendant's Memorandum at 19; Defendant's Opposition Memorandum at 14. Rather, Defendant Price Chopper states that its reason for terminating Plaintiff Christine M.'s employment, *i.e.*, that she "was unable or unwilling" to administer immunizations, is a legitimate non-discriminatory reason for her termination. *See* Defendant's Memorandum at 19. Therefore, Defendant Price Chopper argues that Plaintiff Christine M.'s retaliation claims fail as a matter of law. *See id.*

Plaintiff Christine M. did not address her retaliation claims either in her motion for summary judgment or in her opposition to Defendant Price Chopper's motion for summary judgment. *See generally* Plaintiffs' Memorandum; Plaintiffs' Opposition Memorandum; Dkt. No. 48 ("Plaintiffs' Reply Memorandum").

Where a plaintiff fails to respond to a defendant's arguments regarding some of her claims but responds to its arguments regarding other claims, the courts generally assume that the plaintiff

has abandoned those claims. *See Levy v. Maggiore*, 48 F. Supp. 3d 428, 452 (E.D.N.Y. 2014) (stating that, because the "[p]laintiff d[id] not respond to [the movant's] argument[,] the Court [would] therefore construe [the] [p]laintiff's failure to respond as an abandonment of this claim" (citing *Reid v. Ingerman Smith LLP*, 876 F. Supp. 2d 176, 186 (E.D.N.Y. 2012) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (quoting *Arma v. Buyseasons, Inc.*, 591 F. Supp. 2d 637, 643 (S.D.N.Y. 2008)))) (other citations omitted). In fact, generally, "a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others." *Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014); *id.* (explaining that "preparation of a response to a motion for summary judgment is a particularly appropriate time for a non-movant party to decide whether to pursue or abandon some claims or defenses. Indeed, Rule 56 is known as a highly useful method of narrowing issues for trial.").

Since Plaintiff Christine M. has failed to respond in any way to Defendant Price Chopper's arguments regarding her retaliation claims, the Court concludes that she has abandoned those claims and, therefore, grants Defendant Price Chopper's motion for summary judgment with regard to Plaintiff Christine M.'s ADA and NYSHRL retaliation claims.[10]

---

[10] Alternatively, the Court concludes that Plaintiff Christine M.'s ADA and NYSHRL retaliation claims would "necessarily fail[ on their merits] because [her] inability to perform an essential function of [her] job was a legitimate, non-retaliatory reason for [her] discharge." *Stevens*, 851 F.3d at 231 n.7.

**D.    Plaintiff Vincent M.'s retaliation claims under the ADA and the NYSHRL**

Under the ADA and the NYSHRL, it is unlawful for employers to "'discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." *Guinup v. Petr-All Petroleum Corp.*, 786 F. Supp. 2d 501, 512 (N.D.N.Y. 2011) (quoting 42 U.S.C. § 12203(a)).

"'To defeat a motion for summary judgment addressed to a claim of retaliation under the ADA [and the NYSHRL], a plaintiff must first present sufficient evidence to make out a *prima facie* case . . . .'" *Id.* (quoting *Valtchev v. City of N.Y.*, No. 06 Civ. 7157, 2009 WL 2850689, *6 (S.D.N.Y. Aug. 31, 2009) (citing *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001))). To meet this burden, the plaintiff must present

> "evidence sufficient to permit a rational trier of fact to find [as follows]: (1) that he engaged in protected participation or opposition under the ADA; (2) that the employer was aware of this activity; (3) that the employer took adverse action against the plaintiff; and (4) that a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse employment action."

*Id.* (quoting *Valtchev v. City of N.Y.*, No. 06 Civ. 7157, 2009 WL 2850689, *6 (S.D.N.Y. Aug. 31, 2009) (citing *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001))).

"A plaintiff's burden at this prima facie stage is *de minimis*." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citing *Richardson v. New York State Dept. of Correctional Serv.*, 180 F.3d 426, 444 (2d Cir. 1999)).

If a plaintiff satisfies this initial burden, "a presumption of retaliation arises . . . [and] under the second step of the burden-shifting analysis, the onus falls on the employer to articulate a legitimate, non-retaliatory reason for the adverse employment action." *Jute v. Hamilton Sundstrand*

-18-

*Corp.*, 420 F.3d 166, 173 (2d Cir. 2005) (citing *Quinn*, 159 F.3d at 768).  Finally, "once an employer offers such proof, the presumption of retaliation dissipates and the employee must show that retaliation was a **substantial reason** for the adverse employment action." *Id.* (citing *Fields v. New York State Office of Mental Retardation & Developmental Disabilities*, 115 F.3d 116, 120-21 (2d Cir. 1997)) (emphasis added).  *But see Sanderson v. N.Y. State Elec. & Gas Corp.*, 560 F. App'x 88, 93-94 (2d Cir. 2014) (summary order) (stating that, "[i]f the defendant satisfies its burden of production, the burden shifts back to the plaintiff to demonstrate that the proffered reason is pretext for retaliation and that, more generally, the plaintiff's "protected activity was a **but-for cause** of the alleged adverse action by the employer" (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, ___ U.S. ___, 133 S. Ct. 2517, 2534, 186 L. Ed. 2d 503 (2013)) (other citation omitted) (emphasis added); *Eisner v. Cardozo*, 684 F. App'x 29, 30 (2d Cir. 2017) (summary order) (noting that "[t]here is . . . an unsettled question of law in this Circuit as to whether a plaintiff must show, in order to succeed on her ADA retaliation claim, that the retaliation was a 'but-for' cause of the termination or merely a 'motivating factor'" (citing *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 586 Fed. Appx. 739, 745 n.3 (2d Cir. 2014))).

In this case, there is no dispute that Defendant Price Chopper terminated Plaintiff Vincent M.'s employment, which is sufficient to satisfy the adverse employment action element of his *prima facie* case of retaliation.  *See Maioriello v. N.Y. State Office for People with Developmental Disabilities*, No. 1:14-CV-0214, 2015 WL 5749879, *13 (Sept. 30, 2015) (stating that "'[a]dverse employment actions include discharge from employment").  Therefore, the Court need only address the other three elements of Plaintiff Vincent M.'s *prima facie* case.

### 1. Participation in a "protected activity"

For purposes of Plaintiff Vincent M.'s claim, "'[p]rotected activity 'refers to action taken to protect or oppose statutorily prohibited discrimination.'"" *Maioriello*, 2015 WL 5749879, at *13 (quoting *Smiley*, 2012 WL 967436, at *5 (quoting *Cruz v. Coach Stores, inc.*, 202 F.3d 560, 566 [2d Cir. 2000])). A complaint regarding "reasonable accommodations" for a disability "may also constitute protected activity." *Guinup*, 786 F. Supp. 2d at 513 (citations omitted). Moreover, the complaint itself need not rise to the level of a "formal complaint" to qualify as protected activity. *See Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (protected activities include "making complaints to management"); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000) (stating that "the law is clear that opposition to a Title VII violation need not rise to the level of a formal complaint in order to receive statutory protection").

Contrary to Defendant Price Chopper's assertions, the Court finds that Plaintiff Vincent M. has come forward with sufficient evidence from which a reasonable factfinder to conclude that he engaged in protected activity when he complained to Ms. Bryant and Mr. Cannistraci, Defendant Price Chopper's Vice President of Center Store and Pharmacy, about Defendant Price Chopper's treatment of Plaintiff Christine M. Furthermore, the fact that Plaintiff Vincent M. did not make a formal complaint, despite having received Defendant Price Chopper's employee handbook, which detailed the formal complaint process, is inconsequential.[11] Like the complaints to "management" at issue in *Treglia* and *Sumner*, Plaintiff Vincent M.'s verbal complaints to both Ms. Bryant and Mr.

---

[11] At his deposition, Plaintiff Vincent M. testified that he thought making verbal complaints was the appropriate complaint procedure; and he responded, "No," when he was asked if he was "aware that [he] could file a complaint . . . with the human resources department[.]" *See* Dkt. No. 41-1 Exhibit "C" at 115.

Cannistraci constituted protected activity.

### 2. Defendant Price Chopper's knowledge of Plaintiff Vincent M.'s protected activity

Likewise, the Court finds that Plaintiff Vincent M. has come forward with sufficient evidence to permit a reasonable factfinder to conclude that Defendant Price Chopper had knowledge of his protected activity.

To satisfy the knowledge element of his *prima facie* case, a plaintiff must only establish that his employer, as a corporate entity, knew about his protected activity. *See Taylor v. Lenox Hill Hosp.*, No. 00 Civ. 3773 , 2003 WL 1787118, *7 (S.D.N.Y. Apr. 3, 2003) (citing *Gordon v. New York City Bd. of Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)).

Plaintiff Vincent M. asserts that he verbally expressed his concerns about Defendant Price Chopper's handling of Plaintiff Christine M.'s request for an immunization exemption to Ms. Bryant, to whom Plaintiff Christine M. reported, and to Angelo Cannistraci, who reported directly to Blaine Bringhurst, Defendant Price Chopper's Executive Vice President of Marketing, Merchandising, and Store Operations.[12] *See* Dkt. No. 41-1 Exhibit "C " at 119; Defendant's Statement of Facts at ¶ 73.

Plaintiff Vincent M. states that he told Ms. Bryant and Mr. Cannistraci that Plaintiff Christine M. "should be provided with a reasonable accommodation in light of her condition, that failure to do so would amount to discrimination and that he opposed such action being taken against [her]." *See* Plaintiffs' Statement of Facts at ¶ 33 (citations omitted); Dkt. No. 41-1 Exhibit "C" at

---

[12] Mr. Bringhurst was the individual who made the decision to terminate Plaintiff Vincent M.'s employment. *See* Defendant's Statement of Facts at ¶ 91.

121, 122-23, 124; Defendant's Statement of Facts at ¶ 74. He also expressed to them that he thought that Plaintiff Christine M. "was treated unfairly." *See* Dkt. No. 41-1 Exhibit "C" at 121-124.

### 3. *"Causal connection" between Plaintiff Vincent M.'s protected activity and his termination*

To satisfy the "causal connection" element of his *prima facie* case, a plaintiff must demonstrate that the adverse employment action "occurred in circumstances from which a reasonable jury could infer retaliatory intent." *Treglia*, 313 F.3d at 720. In this regard, the Second Circuit has "held that a close temporal relationship between a plaintiff's participation in protected activity and an employer's adverse actions can be sufficient to establish causation." *Id.* (citing *Cifra*, 252 F.3d at 217 ("The causal connection needed for proof of a retaliation claim can be established indirectly by showing that the protected activity was closely followed in time by the adverse action." (internal quotation marks omitted))). Although "the Second Circuit 'has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship[,]" "district courts within [this] Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *Murray*, 528 F. Supp. 2d at 275 (citations omitted).

In this case, viewing the evidence in the light most favorable to Plaintiff Vincent M., the Court concludes that he has come forward with sufficient evidence from which a reasonable jury could find that the very short period between Plaintiff Vincent M.'s complaints and Defendant Price Chopper's decision to terminate his employment give rise to an inference of causation. In this regard, Plaintiff Vincent M. asserts that he began to complain about Defendant Price Chopper's

-22-

treatment of Plaintiff Christine M. in August 2012, when Defendant Price Chopper made the immunization requirement mandatory, continued to complain when Plaintiff Christine M. requested an exemption from that requirement and complained through January 2013, when Defendant Price Chopper terminated Plaintiff Christine M.  Plaintiff Vincent M. further asserts that, at the time he engaged in his protected activity, Defendant Price Chopper "slotted [him] to be terminated" along with Plaintiff Christine M. in December 2012.  *See* Plaintiff's Statement of Facts at ¶¶ 32, 49 (citations omitted).[13]

### 4. Defendant Price Chopper's burden of production

The Court also finds that Defendant Price Chopper has met its burden of production to provide a legitimate, non-retaliatory reason for its decision to terminate Plaintiff Vincent M.'s employment.  In this regard, Defendant Price Chopper asserts that it terminated Plaintiff Vincent M. due to reorganization in the company, by means of which Defendant Price Chopper sought to reduce costs by eliminating or consolidating positions, including terminating the employment of a total of 34 individuals, one of whom was Plaintiff Vincent M.  *See* Defendant's Statement of Facts at ¶¶ 82-83, 98 (citations omitted).  Mr. Bringhurst decided to terminate Plaintiff Vincent M.'s employment, in particular, because he saw a "redundancy and overlap" in Plaintiff Vincent M.'s position and that of Ms. Bryant's role as the Director of Pharmacy, Health and Beauty Care; he also believed that Ms. Bryant was a better candidate "to advance the Pharmacy Department"; and he "thought that health and beauty care . . . did not appropriately belong in the Pharmacy Department"

---

[13] The Court is aware that Defendant Price Chopper disagrees with Plaintiff Vincent M.'s time line of events.  However, as noted, for purposes of this motion, the Court must view the evidence in the light most favorable to Plaintiff Vincent M.

and, instead, believed it should be moved to the General Merchandising Department.  *See* Defendant's Statement of Facts at ¶¶ 86-90, 95 (citations omitted); Defendant's Memorandum at 31.

> ### 5. Plaintiff Vincent M.'s burden to show that Defendant Price Chopper's reason for his termination was pretextual and that his protected activity was the "but for cause" or "motivating factor" of his termination

After reviewing the record in this case, the Court finds that, although Defendant Price Chopper has come forward with a legitimate, nondiscriminatory reason for terminating Plaintiff Vincent M.'s employment, an issue of fact exists regarding whether this reason is merely pretextual. As previously noted, as a reason for selecting Ms. Bryant, rather than Plaintiff Vincent M., to advance the Pharmacy Department, Mr. Bringhurst stated that, as a result of his observations, he thought Ms. Bryant "was a tremendous leader and was more visible to the store and operations teams and thus, more poised to advance the Pharmacy Department."  *See* Defendant's Statement of Facts at ¶ 88 (citation omitted); Dkt. No. 41-1 Exhibit "A" at 13.  On the other hand, Plaintiff Vincent M. challenges this reason by noting that he received a score of 4.5/5 in Defendant Price Chopper's managerial rating system, while Ms. Bryant received scores of only 4.1, 4.5 and 3.75 in a subordinate position.  *See* Plaintiffs' Statement of Facts at ¶¶ 47, 50 (citations omitted).[14] Furthermore, the parties dispute whether Mr. Bringhurst was aware of Plaintiff Vincent M.'s protected activity and disagree about the temporal proximity of Plaintiff Vincent M.'s protected activities and Mr. Bringhurst's decision to terminate his employment.

Thus, although the Court has doubts about Plaintiff Vincent M.'s ability to prove his ADA

------

[14] Mr. Bringhurst testified that he did not review these scores nor Plaintiff Vincent M.'s personnel file prior to terminating him.  *See* Plaintiffs' Statement of Facts at ¶ 48 (citation omitted); Defendant's Responsive Statement of Facts at ¶ 48 (citations omitted).

and NYSHRL claims of retaliation, in light of the fact that the parties have raised factual disputes about the temporal proximity between Plaintiff Vincent M.'s protected activities and Defendant Price Chopper's decision to terminate his employment, as well as other factual issues related to the causation/pretext element of his claims, the Court denies Defendant's motion for summary judgment with regard to these claims. *See Gordon v. N.Y. City Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000) (stating that it "has consistently held that proof of causation can be shown either: (1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment . . . or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant" (citing *Cosgrove*, 9 F.3d at 1039).

### E.     Plaintiff Christine M.'s ADEA claim

The ADEA protects individuals who are at least forty years of age from termination by reason of their age. *See* 29 U.S.C. §§ 623, 631(a).  In this Circuit, courts analyze ADEA discrimination claims using the three-step *McDonnell Douglas* burden-shifting framework. *See Gallo v. Prudential Residential Servs. Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1993) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 1824-25, 36 L. Ed. 2d 668 (1973)) (other citations omitted).  Under this framework, an employee establishes a *prima facie* case of age discrimination by showing that "1) she was a member of the protected age group; 2) she was qualified for [her] position . . .; 3) she was subject to material adverse employment action; and 4) the circumstances of the adverse employment action give rise to an inference of discriminatory intent." *Restani v. HHS*, No. 5:01CV1394, 2004 WL 437462, *1 (N.D.N.Y. Feb. 9, 2004) (citing *Terry v. Ashcroft*, 336 F.3d 128, 137-38 (2d Cir. 2003) (citations omitted)).

If the employee successfully establishes a *prima facie* case, "the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for taking the adverse action." *Id.* at *2 (citation omitted). If the employer "can offer a legitimate, non-discriminatory reason, the plaintiff must then show that the employer's reason was a pretext for age discrimination." *Id.* (citing *Gallo*, 22 F.3d at 1224-25 (citation omitted)). In other words, to meet this burden, "the plaintiff must demonstrate that (1) the proffered reasons are false and (2) the real reason was unlawful discrimination." *Robins v. N.Y. City Bd. of Educ.*, No. 07 Civ. 3599, *6 (S.D.N.Y. June 21, 2010) (citing *James*, 233 F.3d at 154; *Darrell*, 2004 WL 1117889, at *8). "The ultimate burden of persuading the trier of fact that the [employer] intentionally discriminated against the [employee] remains at all times with the [employee]." *Id.* (quoting *Burdine*, 450 U.S. at 253) (other citations omitted).

A review of the record demonstrates that Plaintiff Christine M. has failed to come forward with any evidence to support her ADEA claim. Her only argument in support of this claim is that the Court "can infer from the facts . . . that [her] termination . . . was at least in part motivated by [her] . . . age." *See* Plaintiffs' Memorandum at 28. To support this "inference" she notes that her work history indicates that she was a high performer even after she contracted ITP, which demonstrates that Defendant Price Chopper terminated her because of her age. *See id.* at 29. Such conclusory assertions, unsupported by the record, are woefully insufficient to withstand Defendant Price Chopper's motion for summary judgment.[15] Accordingly, the Court grants Defendant Price

---

[15] Alternatively, the Court notes that, although there is no dispute that Plaintiff Christine M. was over 40 years of age when Defendant Price Chopper terminated her employment and that her employment constituted a material adverse employment action, as explained with reference to her ADA claim, Plaintiff Christine M. cannot demonstrate that she was qualified for her

(continued...)

Chopper's motion with regard to Plaintiff Christine M.'s ADEA claim.

### F.    Plaintiff Vincent M.'s ADEA claim

To support his claim of age discrimination, Plaintiff Vincent M. relies on his employee performance reviews, all of which "demonstrate his outstanding and superior performance," which, he argues, support the inference that Defendant Price Chopper dismissed him because of his age. *See* Plaintiffs' Memorandum at 29.  In addition, Plaintiff Vincent M. asserts that he was the "only Vice President terminated upon [Defendant Price Chopper's] . . . restructuring and was over 50 years of age at the time of his termination."  *See id.*

To the contrary, Defendant Price Chopper claims that Plaintiff Vincent M.'s age discrimination claim fails because the undisputed facts show that it hired him when he was 43 years old and promoted him twice during his employment at ages 47 and 55.  *See* Defendant's Memorandum at 24; Defendant's Statement of Facts at ¶¶ 67, 69.  Additionally, Mr. Bringhurst, the decision maker responsible for terminating Plaintiff Vincent M., was in the same protected age class.  *See* Defendant's Memorandum at 25; Defendant's Statement of Facts at ¶ 93 (citation omitted).  Finally, Ms. Bryant, the individual who assumed Plaintiff Vincent M.'s job responsibilities following his termination, was the same age as he was.  *See* Defendant's Memorandum at 25; Defendant's Statement of Facts at ¶ 96 (citation omitted).

---

[15](...continued)
position because she cannot perform all of the essential functions of her job as a pharmacist without or without accommodation.  Moreover, Plaintiff Christine M. has not alleged that anyone made any disparaging comments about her or any one else in the age-protected class or that Defendant Price Chopper treated similarly-situated younger employees more favorably than it treated older employees.

The only element of Plaintiff Vincent M.'s age discrimination claim that is in dispute is whether the circumstances surrounding his termination give rise to an inference of discriminatory intent.  Plaintiff Vincent M. has failed to meet his burden to come forward with sufficient evidence to support such an inference.  In fact, the record evidence supports the opposite inference.  First of all, Ms. Bryant, who assumed Plaintiff Vincent M.'s responsibilities, is the same age as he is, which weighs against a finding of discriminatory intent.  *See, e.g., Kaplan v. Beth Israel Med. Ctr.*, No. 07 CV 8842, 2010 WL 1253967, *4 (S.D.N.Y. Mar. 31, 2010) (finding that the fact that the employee who assumed the plaintiff's job responsibilities and who was not significantly younger "support[ed] the conclusion that [the] [p]laintiff ha[d] not established a *prima facie* claim under the ADEA" (citation omitted)); *Fleming v. MaxMara USA, Inc.*, 644 F. Supp. 2d 247, 261 (E.D.N.Y. 2009) (stating that, "[w]here a member of the plaintiff's protected class is contemporaneously hired as a replacement, the offering of 'proof of intentional discrimination appears extremely difficult, if not practically impossible'" (quotation and other citation omitted)).

Moreover, as Defendant Price Chopper points out, it hired and twice promoted Plaintiff Vincent M. when he was a member of the age-protected class, which also undermines any inference of discriminatory intent. Furthermore, although admittedly Plaintiff Vincent M. was the only terminated individual who had the title of Vice President, Defendant Price Chopper also selected an additional 33 individuals for layoff, seven of whom were under the age of 40, *see* Defendant's Opposition Memorandum at 17 (citation omitted); Dkt. No. 41-1 Exhibit "U" at 253, which also negates any inference of discriminatory intent.  *See, e.g., Griffith v. Brouillard Commc'ns, Div. of J. Walter Thompson Co.*, No. 86 Civ. 7274, 1987 WL 15111, *2 (S.D.N.Y. July 31, 1987) (concluding that "the inclusion of [a] 31-year old [employee] among those terminated negate[d] any inference

-28-

that age was a factor in the decision [to terminate fifteen employees for economic reasons]"); *Chin v. ABN-AMRO N. Am., Inc.*, 463 F. Supp. 2d 294, 304 (E.D.N.Y. 2006) (noting that the record facts "raise[d] a strong inference that [the plaintiff] was not terminated for discriminatory reasons," as the defendant provided evidence indicating there was a "legitimate and substantial reduction" in the workforce and that it had also retained individuals within the age-protected class); *Edwards v. Ryder Truck Lines*, Civ. A. No. CA 85-3347C(5), 1986 WL 15492, *3 (E.D. La. July 22, 1986) (finding no discriminatory "pattern based on age" when the defendant, for economic reasons, terminated eight individuals other than plaintiff, seven of whom were under the age of 40).

Finally, Defendant Price Chopper's conclusion that Ms. Bryant was the better candidate to advance the pharmacy department because she was a "tremendous leader" and "more visible to the store and operations team" constitutes an adequate, subjective business judgment that Defendant Price Chopper was entitled to make. *See Loeb v. Textron, Inc.*, 600 F.2d 1003, 1012 n.6 (1st Cir. 1979) (stating that "[a]n employer is entitled to make [its] own policy and business judgments, and may, for example, fire an adequate employee if [its] reason is to hire one who will be even better, as long as this is not a pretext for discrimination").

Viewing all the evidence in the record, the Court finds that, even drawing all reasonable inferences in his favor, Plaintiff Vincent M. has failed to meet his burden to show that the circumstances surrounding his termination give rise to an inference of discriminatory intent. Therefore, the Court grants Defendant Price Chopper's motion for summary judgment with regard to Plaintiff Vincent M.'s ADEA claim.

## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiffs' motion for summary judgment, *see* Dkt. No. 42, is **DENIED in its entirety**; and the Court further

**ORDERS** that Defendant's motion for summary judgment, *see* Dkt. No. 41, is **GRANTED in part** and **DENIED in part**; and the Court further

**ORDERS** that Defendant's motion for summary judgment is **GRANTED** with regard to the following claims: (1) Plaintiff Christine Mainella's disability discrimination claims under the ADA and the NYSHRL; (2) Plaintiff Christine Mainella's retaliation claims under the ADA and the NYSHRL; (3) Plaintiff Christine Mainella's age discrimination claim under the ADEA; and (4) Plaintiff Victor Mainella's age discrimination claim under the ADEA; and the Court further

**ORDERS** that Defendant's motion for summary judgment is **DENIED** with regard to Plaintiff Vincent M.'s retaliation claims under the ADA and the NYSHRL; and the Court further

**ORDERS** that counsel shall participate in a telephonic status conference with the Court on **May 29, 2018**, at **10:30 a.m.** The Court will provide counsel with the conference telephone number prior to the date for the conference; and the Court further

**ORDERS** that the trial of the remaining claims in this matter shall commence on **August 13, 2018**, at **10:00 a.m.** in **Albany, New York.**[16]

**IT IS SO ORDERED.**

Dated: March 28, 2018
Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge

---

[16] The Court will issue a separate Final Pretrial Order, setting forth the dates on which the parties must file their pretrial submissions, including any motions *in limine*, as well as the date on which counsel must appear for the Final Pretrial Conference.